## PATRICK SHERIDAN *vs.* SAMUEL BEAN.

By the common law, a party into whose land agisted cattle escape, and there do damage, may maintain an action of trespass against the general owner of the cattle, or against the agister, at his election; and this law is not altered by the Rev. Sts. c. 113, § 4.

TRESPASS for breach and entry of the plaintiff's close by the defendant's horses. Trial in the court of common pleas, June term 1842, before *Strong*, J. who signed the following bill of exceptions: It was proved, or admitted, that the acts alleged in the writ to be trespasses were done. It appeared in evidence, that the plaintiff's close, described in his writ, was entirely unfenced; and it did not appear that any division ot the boundary line thereof had ever been made for the purpose of fencing. It appeared also in evidence, that the defendant's horses escaped out of the lot of one Spencer, into the lot of the plaintiff; and that they were depastured by Spencer for the defendant, and were in Spencer's care and custody, as an agister, when they escaped into the plaintiff's lot.

The court instructed the jury that the plaintiff was entitled to recover, and they found a verdict for him. The defendant excepted to said instruction.

*B. F. Butler*, for the defendant.

*Wentworth*, for the plaintiff.

The opinion of the court was delivered at October term 1845.

HUBBARD, J. This is an action of trespass *quare clausum fregit*, and the only question submitted to the court is, whether 't will lie against the owner of horses at agistment, which have strayed from the agister's field into the plaintiff's, and have done the damage complained of. It is contended that this

action cannot be maintained, either at common law or upon the statute, against the owner of the horses, under such circumstances, but only against the agister. And the argument urged is, that to constitute a trespass, there must be an invasion of the property or person of another, by one who is an actor without right, either wilfully or negligently; and that in the present case, the act of sending the horses to be agisted was lawful, and that during the time they were agisted they were under the control and in the custody of the agister, and not of the defendant.

But though it is true that the owner of land or of chattels cannot maintain trespass against a wrongdoer, unless he is in possession of the land or the chattels at the time of the wrong done, yet it does not follow, as the converse of the rule, that the general owner may not be liable in an action for the injury done to another by a bailee or servant of the owner, though he is out of possession at the time of the injury. There are cases in which the party has an election whether to sue the owner of the chattel, or the agent or servant. And in regard to cattle, which, from their nature and the manner in which they are kept and employed, are peculiarly liable to trespass upon others, especial care has been taken for the protection of the rights of parties upon whom such trespasses may be committed, by giving them a remedy, not only against owners, but a process *in rem*, against the cattle themselves, when taken damage feasant.

In the case of trespass committed by cattle agisted, which is the case at bar, it is laid down, by approved writers of former times, cited by the plaintiff's counsel, that the party injured has his election to sue either the owner or agister, though he can have but one satisfaction. *Si mes avers sont en le gard de I. S., et durant cest temps font trespas al auter, il avera trespas vers moie ou I. S. a son election, mes il n'avera satisfaction d'ambideaux.* 2 Rol. Ab. 546, cites 7 Hen. IV. 31 *b.* And this is confirmed by Comyns in his Digest, Trespass, C. 1. See also 20 Vin. Ab. Trespass, B.

The defendant's counsel has cited a case from Clayton's Reports, called *Bateman's case*, as maintaining a contrary doctrine. But upon examining that case, it is found merely to affirm the

position, that in case of agist cattle, the agister is liable for tres-pass committed by them, without touching the question of the liability of the owner also to an action. The principal case in Clayton is that of *Dawtry* v. *Huggins*, pp. 32, 33, in which it was ruled, that "if A. have the custody of the goods of B. ; as here it was hogs put into the defendant's yard ; if these do a trespass to the land of C. adjoining, A. shall be punished in trespass, and this though the owner's servant did wait upon them ; and here it was proved the servant of A. did also wait on them, and did serve them, therefore they were in his specia‸ possession ; and the like matter was ruled in the case of *Stephen Bateman* of Wakefield, for agist cattle, if they do commit a trespass, the owner of the soil, where, &c. shall answer for that trespass."

We consider, then, that the common law gave the plaintiff his election to pursue either the owner or agister, at his pleas-ure, or to seize the cattle damage feasant, intending to afford a threefold remedy for an injury so easily committed.

The other question which has been presented for considera-tion is, whether the statutes of this Commonwealth have modi-fied or altered the common law in this respect, at least so far as it regards the owners of agisted cattle. The language of the Rev. Sts. *c.* 113, § 4, is this : "When any person is injured in his land, by sheep, swine, horses, asses, mules, goats, or neat cattle, he may recover his damages, in an action of trespass against the owners of the beasts, or by distraining the beasts doing the damage, and proceeding therewith as hereinafter directed ; provided, that if the beasts shall have been lawfully on the adjoining lands, and shall have escaped therefrom, in consequence of the neglect of the person who has suffered the damage to maintain his part of the division fence, the owner of the beasts shall not be liable for such damage." And we are of opinion that the word "owner," in this section, is used in a popular sense, and is intended to apply to the person in whom is the general property of the animals enumerated, and embraces those also who are in possession under a special title, or by virtue of any lien. We view this section and the *St.* of

1834, c. 184, § 5, as merely a slight modification of § 3 of St 1788, c. 65; and the provisions of that section are considered by Parsons, C. J. in his elaborate opinion in *Rust* v. *Low*, 6 Mass. 98, as merely in affirmance of the common law. If the revisers of our statutes had intended to restrain the operation of c. 113, § 4, to the general owner, and thus to have modified the common law, still such a construction would not avail the present defendant, who seeks to apply it to the agister of cattle.

While there is an apparent hardship in subjecting a person to the action of trespass, where the cause arises from the neglect of another, yet we cannot overlook the necessity of the checks which are required to guard against this species of trespass, which is not only so easily committed, but is so difficult to prevent. And we think our ancestors intended to give an ample remedy, by subjecting the owner, the agent or bailee, and the offending animals themselves, to making good the damages thus committed. Nor does the hardship appear so great, when we consider that the owner has his remedy against the person whom he employs, and if he does not obtain satisfaction for his loss, it is rather he who employed a negligent person that should suffer, than the man who is injured by such neglect.

On the whole, we are of opinion that by the common law the present action is maintainable, and that the same right is affirmed by the statute.                    *Exceptions overruled.*